# AUSTIN *v.* JOHNSON.

PATENTS; INTERFERENCE; CONSTRUCTIVE REDUCTION TO PRACTICE; DILIGENCE.

1. On an appeal to this court in an interference case, the question is as to priority of invention and not as to patentability; and, therefore, where an interference is declared between a reissue application and a patent, a ruling of the Patent Office will be accepted as conclusive that the claims in issue were sufficiently apparent from the specifications and drawings in the original application and that they constituted part of the invention intended to be covered by the original patent.

2. Where a reissue application is involved in an interference with a patent, the application is to be regarded as a continuation of the original application, and the applicant is entitled to the date of his original application as the date of a constructive reduction to practice.

3. Where one of the parties to an interference claimed to have conceived the invention in February, 1895, but laid it aside and was doing nothing when his rivals entered the field in June, 1895, although he could have reduced the invention to practice either actually by making the device or constructively by filing an application at any time he desired, it was *held* he was lacking in diligence.

No. 150. Patent Appeals. Submitted November 14, 1900. Decided April 2, 1901.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Knight Bros.* for the appellant.

*Messrs. H. P. Hood & Son* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is from the Patent Office, taken from the decision of the assistant Commissioner of Patents in a matter of interference, and the subject-matter of it relates to an improvement in railroad crossings.

The issues are three, framed in the following terms:

" 1. In a railway crossing, the combination of turn-tables placed at the intersection of the main rails of the crossing tracks and each bearing two rail sections, the pivots of said tables being eccentrically located with relation to the intersecting lines of the main rails of the tracks, and means for turning said tables to bring the rail sections coincident with the main rails of their respective tracks, substantially as set forth.

" 2. In a railway crossing, the combination of turn-tables placed at the intersections of the main rails of the crossing tracks and each bearing two rail sections, the pivots of said tables being concentrically located with relation to the tables and eccentrically located with relation to the intersecting lines of the main rails of the tracks, and means for turning said tables to bring the rail sections coincident with the main rails of their respective tracks, substantially as set forth.

" 3. In a railroad crossing, the combination with the main rails approaching at an angle but not meeting, of a horizontally swinging pivoted section placed at each of the intersections of the lines of the main rails and each provided with a pair of rail sections, each of said rail sections being so arranged that it may be brought into alignment with the corresponding main rails, the arrangement being such that there is no overtread."

These issues of interference were declared upon the application for a reissue patent by William H. Johnson and Stephen D. Fry.  Stephen J. Austin, the appellant in this appeal, filed his application in the Patent Office, September 5, 1895, and obtained a patent thereon, December 3, 1895. Johnson and Fry filed their original application July 23,

1895, and obtained a patent thereon February 25, 1896, nearly three months after Austin had obtained his patent; and after the lapse of more than sixteen months from the date of Austin's patent, Johnson and Fry filed an application for a reissue. In this application for reissue, claims were made for the first time, as supposed and held by the primary examiner, that interfered with the claims of Austin's patent, and interference was accordingly declared. It appears, therefore, that each party has obtained a patent, but both of the original applications were pending concurrently, though Johnson and Fry were the first to make application to the Patent Office. The examiner of interferences held, and his ruling was affirmed by the other tribunals of the Office on appeal, that, in determining the question of interference, Johnson and Fry were entitled to their original record date of July 23, 1895, and that it devolved upon Austin the burden to overcome that date, as the date of constructive reduction to practice of the invention of the present issues. This is controverted by the appellant Austin, who contends that there was no constructive reduction to practice by Johnson and Fry prior to May 12, 1897, the date of the application for reissue by them.

In this connection it is proper to notice what is shown by the record, that there was a motion by Johnson and Fry to dissolve the interference, as originally declared upon the alleged conflicting claims of the parties; and that motion was sustained as to claims 7, 9, and 10 of Johnson and Fry, from which ruling of the primary examiner, Austin appealed to the Commissioner; and the motion to dissolve was refused as to claims 5, 6, and 8 of Johnson and Fry, and as to claims 1, 2, and 3 of the patent to Austin, and from which ruling Johnson and Fry appealed. The rulings of the primary examiner presented on both appeals were affirmed. The assistant Commissioner, in passing upon these appeals from the primary examiner, said, that while there were certain differences between the claims of the parties, those differences were merely in description of functions as pointed out by the examiner in his decision, and did not arise from any essential difference in scope or in the statement or arrangement or re-

lation of elements.    These questions, however, are not presented for review on this appeal.    On this appeal the question is as to priority of invention, and not as to patentability, and this court has to accept, as the examiner of interferences was bound to accept, under Rule 122 of the Patent Office, the rulings of the officials of the Patent Office, as decisive of the question that the claims now in issue were sufficiently apparent from the specification and drawings in the original application, and that they constituted part of the invention intended to be covered by the original patent.    And it seems to be the settled practice in the Patent Office, that where the Office holds an applicant to be entitled to a reissue for broader claims it in effect holds that it was by reason of inadvertence, accident, or mistake that the applicant did not make the broad claims for his patent, and that he has been reasonably diligent in applying for such reissue, and, therefore, there has been no such dedication to the public of the invention covered by the broad claims as should prevent the Office from considering the reissue application *a continuation of the original application.    Huson* v. *Crowell & Yates,* 64 O. G. 1006.    And this being so, Johnson and Fry being the first to make application to the Patent Office, and as their application was then pending at the time of the application by and the grant of patent to Austin, it is clear, we think, that their original application is entitled to be considered as constructive reduction to practice of the inventions of the present issues; and that the burden of proof is upon Austin to show either that he conceived and reduced the invention to practical operation prior to the date of the Johnson and Fry application, or that he was the first to conceive the invention, and was diligently engaged in perfecting and reducing the same to practical operation when the original application of Johnson and Fry was filed.

The issues of the interference are framed (1) substantially in the words of Austin's patent claim 1, involving claim 5 of Johnson and Fry; (2) Austin's patent claim 2, involving claim 6 of Johnson and Fry; and (3) substantially the words of claim 8 of Johnson and Fry, and involving claim 3 of Aus-

tin's patent; these being the claims remaining subject to the interference proceeding after the rulings upon the motion to dissolve. In reference to the issues thus made up, a considerable volume of testimony was taken in behalf of the respective parties, bearing upon the question of priority of invention.

The entire evidence has been very carefully examined by all three of the tribunals of the Patent Office — the examiner of interferences, the examiners-in-chief, and the assistant Commissioner — and they all came to the same conclusion, that is, that Johnson and Fry were entitled to priority of invention; and in that conclusion we fully concur. The evidence is conflicting, and very unsatisfactory. The *onus* of proof being upon Austin, we do not see how any other rational conclusion could have been arrived at than that reached by the tribunals of the Patent Office. Upon the subject of alleged disclosure of invention, a subject to which a large portion of the evidence is directed, the evidence on the part of Austin is anything but satisfactory; indeed, its reliability is exceedingly questionable. It is unnecessary to repeat the evidence in detail, as it could serve no useful purpose. But as a fair review of and comment upon the evidence, we cannot do better than to incorporate herein the following extract from the opinion of the assistant Commissioner, which deals with the most salient facts of the case:

" The testimony taken on the question of priority in this case is conflicting and very unsatisfactory. Johnson and Fry do not allege a conception of the invention until April 1, 1895, and Austin has introduced his own testimony and the testimony of two witnesses, Licht and Keeney, to the effect that a model introduced in evidence as Exhibit 3 was made prior to February 12, 1895. This model itself does not embody everything included in the issue, since it includes merely a single turn-table and not the combination of the several turn-tables which are necessary to a complete crossing or the means for operating all of those turn-tables together. It is true that this model would furnish a good basis for an oral disclosure of the entire device which Austin claims to have had in mind,

but the witnesses in his behalf fail to testify to any such complete disclosure. Their testimony as to the existence of even the model itself is far from satisfactory. They do not describe the construction disclosed to them, but merely say, after seeing Exhibit 3, that it is a device which they saw prior to February 12, 1895. Being apparently unable to describe the construction and operation of the device disclosed to them, it would seem that their identification of Exhibit 3 is based merely upon its appearance. They admit, however, that Austin made other crossings, and that they saw them, and there is no very satisfactory explanation how they are able to identify this particular model as one made prior to February 12, 1895. The model itself has several different dates written thereon, but it is admitted that they were placed there at different times, and that no one of them was written there at the time indicated by it.

" Even if this evidence is accepted as proving a conception of the invention by Austin at the time stated, he did not thereafter exercise diligence in the matter until after Johnson and Fry had entered the field, and he was the last to reduce to practice. There is no proof that he did anything further with the invention until after John and Fry had constructively reduced it to practice by filing their application. He does state that he commenced castings for a full-sized crossing in July, 1895, but he is not corroborated by any witnesses, and the witness Winslow, called by Johnson and Fry, states that he made the models for the castings referred to, and that they did not involve the invention here in controversy. Winslow is a prejudiced witness, and, therefore, his testimony is not entitled to much weight; but neither is the uncorroborated testimony of the inventor himself. It is also attempted by this witness to discredit the testimony of Austin and his witnesses in regard to a disclosure of the invention as early as February, 1895, but the substance of his testimony is merely that he was employed by Austin in the same works with the other witnesses and did not hear anything about the invention at that time. His testimony, therefore, has very little force.

" Johnson and Fry have introduced testimony to the effect

that they disclosed the invention to others at least as early as the 1st of June, 1895. They have introduced three exhibits, photographs Nos. 1 and 2 and model No. 1, as illustrating the invention which they disclosed to others at that time. The photographs show everything embodied in the issue, but they were not made in June, 1895, and are introduced merely as an illustration of the thing which was disclosed at that time by other means. Model No. 1 is said to have been made in May, 1895, but, like Austin's Exhibit 3, it embodies merely a single turn-table and not the entire device in issue. The witness Lloyd states that Johnson and Fry showed him models like those illustrated in the photographs in May, 1895. A. E. Johnson states that model No. 1 was made about the first of June, and Parks corroborates him in this. Yeter states that he saw model No. 1 in May, 1895. The testimony of the witnesses as to the disclosure to them is not very full and satisfactory, but when taken in connection with the testimony of Johnson and Fry themselves it must be held to establish a conception by them as early as the 1st of June, 1895. This evidence is better than that produced on behalf of Austin, since the witnesses do give some description of the construction disclosed to them aside from referring to the exhibits, and, therefore, if the evidence for Austin is held to establish his conception in February, that for Johnson and Fry must be given as much weight in establishing their conception in June. This conception by Johnson and Fry in June was prior to the time when Austin claims to have commenced work on castings embodying the invention, and, therefore, it is immaterial whether or not he did make those castings, since he was doing nothing when Johnson and Fry entered the field. It is not claimed that Austin was unable to reduce the invention to practice, either actually by making the device or constructively by filing an application for a patent, at any time he desired, and, therefore, his action in laying aside the invention until after Johnson and Fry had entered the field shows a lack of diligence on his part. He filed other applications covering inventions on the same line in the meantime.

" There has been much testimony introduced in regard to

an alleged disclosure of the invention to Austin by Johnson and Fry in June, 1895. It is alleged that Austin made a trip at that time to Veedersburg, where Johnson and Fry's works were located, and that the invention was then disclosed to him; but this Austin denies. Several witnesses testify positively to this disclosure, and others testify to the fact that Austin was in Veedersburg at that time."

But however this fact may be, the testimony is in direct conflict in regard to it, and it is not deemed of any such material importance as to require of this court a judgment as to the truth or falsity of the allegation.

We *affirm the decision of the acting Commissioner, and direct this decision and the proceeding in the cause to be certified to the Commissioner of Patents as directed by the statute.*